UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE HULTMAN, | Case No. 24-cv-03381-JST |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| KENNETH W. MATTSON, et al., | Re: ECF No. 56 |
| Defendants. | |

Now before the Court is Defendants Kenneth W. Mattson and KS Mattson Partners, LP's motion to dismiss, ECF No. 56, joined by Defendants LeFever Mattson, Inc. ("LeFever Mattson"), Divi Divi Tree, LP ("Divi Divi"), and Specialty Properties Partners, LP ("Specialty Properties"). *See* ECF Nos. 62, 78. The Court will grant the motion and dismiss the complaint as to Mattson and KS Mattson Partners, LP.

I.      **BACKGROUND[1]**

   A.      **Hultman's Investments in Divi Divi and Specialty Properties**

Plaintiff Charlene Hultman is a 79-year-old woman who resides in Brentwood, California. ECF No. 1 ¶ 2. She was married to Robert Hultman until his death in 2020. *Id.*

LeFever Mattson is a real estate investment entity located in Citrus Heights, California. In early 2011, while Kenneth W. Mattson was LeFever Mattson's president and co-owner, he persuaded the Hultmans to invest a substantial portion of their net worth in a real estate investment partnership called Divi Divi. ECF No. 1 ¶ 13. In April 2011, the Hultmans invested $380,000 into Divi Divi, with payment made to LeFever Mattson and with Mattson as the "Investment

---

[1] For the purpose of resolving Defendants' motion to dismiss, the Court accepts as true the allegations in the complaint, ECF No. 1. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Contact" person.  *Id.* ¶ 14.

On June 9, 2016, Mattson's assistant sent an email to Robert Hultman explaining that LeFever Mattson had decided to use a new custodian, Madison Trust Company, for the Divi Divi investment.  *Id.* ¶ 16.  Accordingly, on June 29, 2016, Robert Hultman transferred the investment in Divi Divi to Madison Trust Company.  *Id.* ¶ 17.  The Hultmans received annual and quarterly account statements from Madison Trust Company reflecting the increasing value of their investment in Divi Divi.  *Id.* ¶ 19.  The last annual account statement Charlene Hultman received was dated December 31, 2023, and reflected the value of her investment to be worth $605,240.65.  *Id.*  Hultman and her husband also received monthly distributions related to their investment in Divi Divi from 2011 through the first quarter of 2024.  *Id.* ¶ 20.

As with their Divi Divi investment, Hultman and her husband also invested in Specialty Properties through Mattson at his persuasion.  *Id.* ¶ 23.  On May 6, 2013, Hultman and her husband made an investment in Specialty Properties of $420,000.  *Id.*  Hultman received annual statements concerning the value of her investment from the custodian of the account.  *Id.* ¶ 25.  The last quarterly account statement she received was dated March 31, 2024.  *Id.*  That statement gave the value of her investment in Specialty Properties as $355, 215.63.  *Id.*  Charlene Hultman also received monthly distributions related to her investment in Specialty Properties for ten years, from 2013 through the first quarter of 2024.  *Id.* ¶ 26.

Following Robert Hultman's death in 2020, Charlene Hultman became the sole owner of both the Divi Divi and Specialty Properties investments.  *Id.* ¶¶ 18, 24.

**B.**      **Revelations of Fraud**

In April and May 2024, Hultman received communications from Tim LeFever—the other co-owner of LeFever Mattson—and Madison Trust Company informing her that (1) Mattson had resigned from his positions as CEO and CFO of LeFever Mattson, and (2) Mattson had engaged in a large number of unauthorized transactions relating to his purported interest in Divi Divi.  *Id.* ¶¶ 27–29.  According to LeFever, the unauthorized transactions included transactions in which Mattson purportedly sold portions of his own interest in Divi Divi to investors without actually executing the requisite purchase agreements and without authorization by or approval of LeFever

1    Mattson's board of directors or shareholders.  *Id.* ¶¶ 27–29.  On May 9, 2024, Madison Trust

2    Company sent an email to Hultman stating that its records indicated that her account balance had

3    fallen to $458.92.  *Id.* ¶ 30.

4         Hultman then filed this lawsuit seeking relief for the following: (1) violation of Section

5    10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5;

6    (2) Financial Abuse of an Elder under California Welfare and Institutions Code § 15610.30; (3)

7    fraud; (4) breach of fiduciary duty; (5) conversion; and (6) constructive trust.  ECF No. 1 at 12–

8    15.  She seeks compensatory and punitive damages, declaratory relief, injunctive relief, and

9    attorney's fees and costs.

10        **C.    Procedural History**

11        Plaintiff filed her complaint on June 5, 2024.  ECF No. 1.  Kenneth W. Mattson and KS

12   Mattson Partners, LP filed this motion to dismiss on July 16, 2024.  ECF No. 56.  Hultman filed

13   an opposition on July 26, 2024.  ECF No. 63.  The Mattson defendants replied on  August 2, 2024.

14   ECF No. 69.

15        On September 12, 2024, Defendants LeFever Mattson and Divi Divi filed voluntary

16   petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

17   Court for the Northern District of California.  ECF No. 85.  This proceeding is thus stayed as to

18   those two defendants under 11 U.S.C. § 362(a)(1), (3).

19   **II.    JURISDICTION**

20        The Court has jurisdiction over this action under 28 U.S.C. § 1331.

21   **III.    LEGAL STANDARD**

22        **A.    Federal Rule of Civil Procedure 12(b)(1)**

23        "Article III of the Constitution confines the federal judicial power to the resolution of

24   'Cases' and 'Controversies.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  "No case

25   or controversy exists if a plaintiff lacks standing or if a case is not ripe for adjudication, and

26   consequently a federal court lacks subject matter jurisdiction."  *Temple v. Abercrombie*, 903 F.

27   Supp. 2d 1024, 1030 (D. Haw. 2012) (citations and quotations omitted).  A defendant may attack a

28   plaintiff's lack of subject matter jurisdiction by moving to dismiss for lack of jurisdiction under

United States District Court
Northern District of California

3

Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  The party asserting jurisdiction always bears the burden of establishing subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.      Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Knievel*, 393 F.3d at 1072.  However, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted).

## IV.    DISCUSSION

### A.    Section 10(b)

Defendants move to dismiss Hultman's sole federal claim—a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  Section 10(b) prohibits the use of "any manipulative or deceptive device or contrivance" "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b).  Under that section, the SEC promulgated Rule 10b-5, which makes it unlawful for any person to "employ any device, scheme, or artifice to defraud" or "make any untrue statement of a material fact . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.  A Section 10(b) claim must be brought within either two years after the discovery of the facts constituting the violation or five years after such violation.  28 U.S.C. § 1658(b).

Defendants argue that Hultman's Section 10(b) claim is barred by the five-year statute of repose because the securities transactions at issue here took place in 2011, 2013, and by 2016 at the latest, and she filed her complaint in 2024.  ECF No. 56 at 15.  Hultman does not dispute that she filed her complaint more than five years after she and her husband purchased the securities at issue.  *See* ECF No. 82 at 2.

Hultman instead argues that her claim is nonetheless timely because Defendants allegedly "had committed securities fraud within the past five years in connection with the purchase of these investments" by providing "false valuations of [their] investments in the partnerships via account statements, as well as providing monthly distributions to Plaintiff that fraudulently conveyed that Plaintiff was actually invested in the two partnerships at issue—both as recently as the first quarter of 2024."  ECF No. 82 at 2.  She argues that "[t]he five-year statute at issue begins to run as of the last culpable act or omission of the defendant," ECF No. 63 at 13, which here means the false valuations of Hultman's investment she received in March 2024, *id.* at 14.

While some courts have held that the statute of repose for Section 10(b) and Rule 10b-5 claims begins to run "on the date the parties have committed themselves to complete the purchase or sale transaction," other courts "have concluded that the five-year statute of repose begins to run from the date of the alleged misrepresentation."  *Goldberg v. Rome McGuigan, P.C.*, No. CV 20-

United States District Court
Northern District of California

9958-JFW (SKx), 2021 WL 1570858, at *6 (C.D. Cal. Mar. 4, 2021) (adopting the latter view)

(first quoting *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009), and then citing *In re*

*Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200 (3rd Cir. 2007); *McCann v. Hy-Vee, Inc.*, 663

F.3d 926, 932 (7th Cir. 2011)).  "The Ninth Circuit has not ruled on this issue."  *Id.*

  Critically, however, Hultman has not identified—and the Court has not found—any cases

where the statute of repose for a Section 10(b) or Rule 10b-5 claim began to run from the date of

an alleged misrepresentation that took place *after* any purchase or sale transaction took place.  *See*

ECF No. 82 at 2 (Hultman acknowledging that she was "unable to locate a case directly on point"

supporting her position).  The courts that have concluded that the five-year statute of repose begins

to run from the date of the alleged misrepresentation dealt with misrepresentations that preceded—

and were thus "in connection with"—a purchase or sale of a security.  *See, e.g.*, *In re Exxon Mobil*

*Corp. Sec. Litig.*, 500 F.3d at 200 (finding that the statute of repose began to run from the date of

the alleged misrepresentation in March 1999 rather than from the date of the exchange of

securities and hence suffering of any damages in November 1999); *In re Zoran Corp. Derivative*

*Litig.*, 511 F. Supp. 2d 986, 1014 (N.D. Cal. 2007) (rejecting the theory that material

misstatements could revive *past* option grants for the purpose of the statute of repose).  The policy

behind these decisions is not to extend the period of a defendant's potential liability, but rather, the

opposite:  to allow defendants "to put their wrongful conduct behind them—and out of the law's

reach," as of the defendant's last culpable act, even if the plaintiff has not yet suffered an injury.

*Goldberg*, 2021 WL 1570858, at *7 (quoting *Exxon*, 500 F.3d at 200).  That's because "statutes of

repose pursue similar goals as do statutes of limitations (protecting defendants from defending

against stale claims), but strike a stronger defendant-friendly balance."  *Exxon*, 500 F.3d at 199–

200.

  The Court finds the reasoning in *Betz v. Trainer Wortham & Co.*, 829 F. Supp. 2d 860

(N.D. Cal. 2011)—a case cited by both parties—instructive.  In *Betz*, the plaintiff identified two

sets of misrepresentations made within the period of repose to support her Section 10(b) claim: (1)

"lies" about the status of the plaintiff's portfolio and the nature and quality of her investments

made *prior* to the repose period, and (2) unsuitable recommendations made by the defendants to

United States District Court
Northern District of California

United States District Court
Northern District of California

1    plaintiff to trade on margin and which may have led to margin trades within the repose period.

2    *See id.* at 864–65.  The Court concluded that the first set of representations were time barred,

3    noting that the "plaintiff fail[ed] to explain how any of these specific representations were made

4    'in connection with the sale or purchase of a security' within the limitations period."  *Id.*  The

5    Court further concluded that the representations were instead "an attempt to mollify plaintiff's

6    concerns about her original investments made" outside the period established by the statute of

7    repose.  *Id.*  Conversely, the Court allowed plaintiff's Section 10(b) claim based on the second set

8    of representations to survive because those representations were "made in connection with

9    plaintiff's trading on margin . . . within the repose period."  *Id.* at 865.

10          Here, Hultman's alleged misrepresentations resemble the first set of representations that

11   were time-barred in *Betz*.  The alleged misrepresentations are not connected to the sale or purchase

12   of a security within the five-year period preceding the filing of the complaint.  In fact, Hultman

13   does not allege that she purchased or sold any of the relevant securities during that period.  As in

14   *Betz*, Hultman "provides no authority for the proposition that representations made to persuade

15   [her] to refrain from selling [her investments in Divi Divi or Specialty Properties] can support a

16   Section 10(b) claim."  *Betz*, 829 F. Supp. 2d at 865.  On the contrary, such representations do not

17   by themselves constitute violations giving rise to a Section 10(b) claim.  *Clayton v. Landsing Pac.*

18   *Fund, Inc.*, No. C 01-03110 WHA, 2002 WL 1058247, at *2 (N.D. Cal. May 9, 2002), *aff'd*, 56 F.

19   App'x 379 (9th Cir. 2003) ("The fact that plaintiff was fraudulently induced to hold her shares

20   within the limitations period is irrelevant insofar as Rule 10b–5 is concerned, since the rule does

21   not provide a cause of action for claims that fraudulent statements caused a shareholder *not* to sell

22   her stock.") (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737–78 (1975)).  A

23   misrepresentation that occurs after the purchase of a security cannot have had the "causal

24   connection between the material misrepresentation and the loss" required by federal securities law,

25   *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005), because the plaintiff's purchase decision

26   has already been made.

27          Hultman asks the Court to treat the post-sale misrepresentations and/or monthly

28   distributions as the last act in a continuous scheme that reaches back to the actual fraudulent

                                            7

investments in Divi Divi and Specialty Properties.  But the purpose of the statute of repose for Section 10(b) and Rule 10b-5 claims is "clearly to serve as a cutoff," and "tolling principles do not apply to that period."  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  Accordingly, the statute of repose "cannot be equitably tolled because of a defendant's fraudulent concealment of a cause of action."  *Clayton.*, 2002 WL 1058247, at *2 (citing *id.*).  Courts have thus consistently rejected applying what is essentially a theory of continuing fraud or continuing wrong to toll Section 10(b)'s strict statute of repose.  *See In re Maxim Integrated Prod., Inc., Deriv. Lit.*, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008) ("There can be no recovery for reliance on representations made prior to the five-year statute of limitations period under a theory of continuing wrong.") (citing *In re Zoran Corp.*, 511 F.Supp.2d at 1014); *see also Clayton*, 2002 WL 1058247, at *3 (rejecting the plaintiff's continuing-violation argument because "[t]he fact that plaintiff was fraudulently induced to hold her shares within the limitations period is irrelevant insofar as Rule 10b–5 is concerned, since the rule does not provide a cause of action for claims that fraudulent statements caused a shareholder *not* to sell her stock"); *Carlucci v. Han*, 886 F. Supp. 2d 497, 515 (E.D. Va. 2012) (collecting cases which have rejected applying a continuing fraud exception to the statute of repose for Section 10(b) claims).

Because Hultman has not alleged any wrongful acts giving rise to a Section 10(b) claim within the five-year statute of repose of her complaint, the Court finds that she has failed to state a claim under Section 10(b) or Rule 10b-5.

### B.      Remaining State Law Claims

A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice."  *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996).  Because the Court has dismissed Hultman's sole federal claim, the Court declines to exercise supplemental jurisdiction over Hultman's remaining state law claims and dismisses them without prejudice.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Hultman's Section 10(b) claim, ECF No. 56, is granted.  Because Hultman has not identified any correction which could cure the defect in her complaint, the Court grants Defendants' motion to dismiss Hultman's Section 10(b) claim against Mattson and KS Mattson Partners, LP without leave to amend.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").  Hultman's remaining state law claims against Mattson and KS Mattson Partners, LP are dismissed without prejudice.  The case is stayed as to Defendants LeFever Mattson and Divi Divi pending resolution of their bankruptcy proceedings.

**IT IS SO ORDERED.**

Dated:  October 21, 2024



_____
JON S. TIGAR
United States District Judge